**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. **MICHAEL WALTERS,** | ) | |
| an individual, | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **Case No.**  21-CV-196-RAW |
| | ) | |
| 1. **AUTOZONERS, LLC d/b/a AutoZone,** | ) | |
| a foreign limited liability company, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | **ATTORNEY LIEN CLAIMED** |
| | ) | **FOR THE FIRM** |

## COMPLAINT

**COMES NOW,** the Plaintiff, Michael Walters ("Plaintiff"), through his attorneys of record, Charles C. Vaught and Jessica N. Vaught of *Armstrong & Vaught, P.L.C.* and hereby brings discrimination and retaliation claims pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.§§621, *et seq.* and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§2000e, *et seq.*, as amended, against AutoZone. ("Defendant") for violations of these statutes committed by Defendant.

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367(a). In particular, jurisdiction is premised on violations of the ADEA and ADA.

2. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. § 2000e, *et seq.*

3. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

4. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Eastern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C.

§ 1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

5. Plaintiff is, and was at all relevant times, a resident of the State of Oklahoma, residing in Okmulgee, Okmulgee County, Oklahoma.

6. The acts and/or omissions giving rise to this lawsuit occurred in Okmulgee County, State of Oklahoma.

7. In conformance with Title VII statutory prerequisites, Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC") less than 300 days after the events described herein occurred. Subsequently, Plaintiff submitted a Charge of Discrimination, prepared by the EEOC, to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on April 9, 2021 (attached as Exhibit A hereto and hereby incorporated by reference as though fully set forth herein), was received by Plaintiff via E-Mail on April 9, 2021. Plaintiff will have timely filed his *Complaint* within 90 days of his receipt of the Notice of Right to Sue from the EEOC.

8. Defendant is an employer as defined by the ADEA in that it employed more than 20 employees who worked for the company for at least twenty calendar weeks for the relevant periods at issue. Additionally, Defendant is an employer as defined by the ADA, in that it was a public entity engaged in an industry affecting commerce who has fifteen or more employees for each working day of twenty or more calendar weeks in the current or proceeding calendar year.

9. Plaintiff was, at all times relevant hereto, an employee as defined by the ADEA and ADA, in that he was employed by an employer.

## OPERATIVE FACTS

10. Plaintiff was hired by Defendant AutoZone on July 27, 2013 as a Parts Sales Manager.

11. During the years 2018 through 2020, Plaintiff was subjected to discriminatory comments based on his age. Relevant, non-exclusive, examples of the discriminatory comments are, as follows:

   a. Brandon Hoffman, Manager, and Derick Keiser, Commercial Assistant, would call Plaintiff "old man" several times a day. This behavior enticed other employees to join in on calling Plaintiff "old man."

   b. Mr. Hoffman would tell Plaintiff's co-workers that he began working at the store shortly after the Civil War.

   c. Mr. Hoffman, while speaking with Larry Fields, Delivery Driver, stated that Plaintiff would not be able to make deliveries without his "power chair."

   d. Mr. Hoffam would ask Plaintiff "you're old, why haven't you retired yet?"

   e. There was an incident where Plaintiff did not hear what Wendi Brown, Parts Sales Manager, said so Plaintiff replied "what?" Ms. Brown then said "hey old man, why don't you get the fucking cum out of your ears."

   f. Austin LNU, co-worker, called Plaintiff "old man" when he was attempting to get past him to see the computer.

12. During his employment, Plaintiff was subjected to discrimination based on his disabilities. Relevant, non-exclusive, examples of the discriminatory comments are, as follows:

   a. Daily, Mr. Hoffman and Mr. Keiser, along with other employees, would say there were going to take Plaintiff's [prosthetic] leg away from him and proceeded to laugh.

   b. Mr. Hoffman said he was going to take Plaintiff's [prosthetic] leg and put in on Plaintiff's head like a "fucking dunce hat" then Mr. Hoffman stood on one leg and hopped from side to side and said "watch you flop around."

c.  Mr. Hoffman was telling Betty LNU, co-worker, a joke; "you know, everything is going along just fine and then shit happens, and they have to cut a leg off! That's when things get fucking serious, right Mike?" Mr. Hoffman and Betty laughed. Mr. Hoffman repeated his "joke" one more time before Plaintiff walked away.

d.  In late March of 2020, Mr. Hoffman told Plaintiff he was going to "whittle" on his [prosthetic] leg and laughed. Mr. Hoffman then told Plaintiff he wanted to grab Plaintiff's [prosthetic] leg and jerk on it and drag him around, becoming animated and pretending he had Plaintiff's prosthesis, jerking it around in a big circle.

e.  Austin LNU, co-worker, would not let Plaintiff near the computer and when Plaintiff jokingly told Austin to move out of the way, Austin replied, "I'll take your leg, old man."

f.  Mr. Keiser, along with all of Plaintiff's co-workers, were aware that Plaintiff suffers from a hearing deficit. On several occasions, Mr. Keiser, Mr. Hoffman and Ms. Brown would say "Hey Mike" and then finish the statement in a lower tone of voice, knowing Plaintiff could not hear them. When Plaintiff would try to determine what they had said, they would simply laugh but not repeat it. It went so far as Ms. Brown telling Plaintiff to "get the fucking cum out of [his] ears."

g.  Mr. Keiser, while talking to Everett Horn, a commercial customer, joked that Mr. Horn could not just take Plaintiff's [prosthetic] leg. When Plaintiff pointed out that his prosthesis was held on by a vacuum pump and could not be easily removed, Mr. Horn said "I don't give a shit, if I wanted to take it, I'd just cut the damn thing off." Mr. Horn and Mr. Keiser proceeded to laugh.

      h.  Mr. Hoffman would harass Plaintiff when he would try to take time off for his doctor's appointments related to his leg.

13. Plaintiff told Mr. Hoffman and Mr. Keiser, along with the other employees, to stop with the hurtful comments on several occasions.

14. Plaintiff submitted a written complaint to Grant Bagwell, Human Resources, on July 26, 2020.

15. Not being able to deal with the constant harassment and discrimination from his supervisors and co-workers, Plaintiff was forced to resign his job as of July 28, 2020. Plaintiff no longer felt safe at work given that Mr. Keiser, who has a violent criminal history, repeatedly told him "you mess with me old man and I'll fucking hurt you."

## FIRST CLAIM
### (DISCRIMINATION IN VIOLATION OF THE ADEA)

16. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

17. Plaintiff was a member of a protected class, to wit: an individual over 40-years of age.

18. Plaintiff was subjected to slurs, insults, jokes, ridicule, and intimidation of an ageist nature from his co-workers during his employment with Defendant.

19. The ageist conduct was unwelcome.

20. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created a work environment that was permeated with abusive or hostile behavior designed to ridicule and harass Plaintiff on account of his age.

21. Defendant's conduct was in violation of 29 U.S.C.§§621, *et seq.*

22. Plaintiff perceived the working environment to be abusive and hostile.

23. A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

**WHEREFORE**, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## <u>SECOND CLAIM</u>
### (DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

24. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state, as follows:

25. As a result of his prothesis and hearing deficit, Plaintiff is disabled pursuant to the Americans with Disabilities Act ("ADA").

26. In the alternative, Defendant perceived Plaintiff as disabled or the Plaintiff had record of such impairment.

27. Defendant violated the ADA by permitting its agents and/or employees to create a hostile work environment regarding Plaintiff's disability.

28. Defendant discrimination against Plaintiff to the point where a reasonable person would resign.

29. As a direct result of the discrimination, Plaintiff terminated his employment with Defendant in July of 2020.

30. By and through, but not limited to, the events described herein, Plaintiff's terms and conditions of employment were adversely affected by the hostile work environment Defendant's agents and/or employees created regarding Plaintiff's disability.

31. By and through, but not limited to, the actions described herein, Defendant has violated the ADA, *42 U.S.C.§§ 12101, et seq.*

32. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

33. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

34. Plaintiff has been injured by this discrimination, and is entitled to compensatory and punitive damages and any other damages available pursuant to the ADA.

**WHEREFORE**, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: _____

**Charles C. Vaught, OBA #19962**
**Jessica N. Vaught, OBA #33114**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *Telephone*
(918) 583-1755 – *Facsimile*
***Attorneys for Plaintiff***